UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MITCHELL NEWMAN,

                                         **REPORT AND**
                Plaintiff,           **RECOMMENDATION**

      - against -                  08 CV 658 (RJD)

MOSHE MOR, et al.,

                Defendants.
-----------------------------------------------------------X

On February 15, 2008, plaintiff Mitchell Newman ("Newman") filed this action against defendants Moshe Mor ("Mor"), Elena Vradii ("Vradii"), Dafna Development Corp. ("Dafna"), Mohammad Chouhan ("Chouhan"), and Harry Oh ("Oh") (collectively, "defendants"), alleging claims of breach of contract, conversion, unjust enrichment, and fraud based on the loss of funds transferred by plaintiff to defendants pursuant to a Profit Sharing Agreement (the "PSA") entered into by the parties on August 10, 2007.

Despite proper service on each of the defendants, they have failed to file an Answer or otherwise respond to the Complaint. On June 18, 2008, plaintiff moved for entry of default against all defendants, and the Clerk of Court entered a default. On June 27, 2008, the district court referred the action to the undersigned to conduct an inquest and issue a Report and Recommendation as to damages.

On July 29, 2008, this Court held a hearing on the issue of damages. Despite notice of the hearing dated June 30, 2008, defendants failed to appear. Based on the uncontroverted testimony and documentation submitted by plaintiff, the Court respectfully recommends that

plaintiff be awarded $522,500 in damages and interest accrued both pre- and post-judgment.

## FACTUAL BACKGROUND

Plaintiff, a citizen and resident of Morganville, New Jersey, alleges that Dafna is a New York corporation, engaged in the business of real estate development, with its principal place of business located at 214-45 Northern Boulevard, in Bayside, New York. (Compl.[1] ¶¶ 3, 6, 10). Defendant Mor, alleged to be the "President" of Dafna, his wife Vradii, and the other individual defendants, Chouhan and Oh, allegedly shareholders of Dafna, are all New York citizens, residing in New York.[2] (Id. ¶¶ 4, 5, 7, 8, 9, 11; Tr. at 7).[3]

Plaintiff testified that he originally met Mor, who was working with a licensed real estate broker, while plaintiff was selling a building located on the West side of Manhattan which was occupied by plaintiff's business. (Tr. at 4). At some point thereafter, prior to the closing on the sale of plaintiff's building in October 2007, Mor approached plaintiff and told him that there was vacant land for sale on the strip in Las Vegas that Mor thought was a good opportunity. (Id. at 6). Plaintiff alleges that he executed the PSA, relating to this investment in certain property located in Las Vegas, Nevada, and that Mr. Mor executed the PSA on behalf of Dafna. (Compl.

---

[1]Citations to "Compl." refer to plaintiff's Complaint in this action, filed February 15, 2008.

[2]Jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332(a)(i), on the grounds that plaintiff is a New Jersey citizen and at least two of the individual defendants and Dafna are New York citizens.

[3]Citations to "Tr." refer to the transcript of the inquest proceedings held before this Court on July 29, 2008.

2

¶ 11, Ex. A; Newman Aff.[4] ¶ 5, Ex. B). Pursuant to the PSA, plaintiff and his brother-in-law, Paul Rizzi, as investors, would together put up $500,000 to hold the contract on the property, and they would split any profits 50/50 with Dafna. (Tr. at 8). On August 10, 2007, pursuant to the PSA, plaintiff and Rizzi, each sent wire transfers in the amount of $250,000 of their personal funds to an escrow account (the "Escrow Account") in the name of Terra Title Corporation ("Terra Title"). (Compl. ¶¶ 11, 12, 13; Newman Aff. ¶ 5).[5]

The escrow agent, Stephen Amster, Esq., an attorney with offices in Ft. Lauderdale, Florida (Tr. at 11), submitted an affidavit confirming that he received $250,000 from plaintiff and $250,000 from Paul and Sandra Rizzi for the benefit of Dafna. (Amster. Aff.[6] ¶ 2). According to Amster, he was to hold the $500,000 in escrow (the "Escrow Funds") pending the Las Vegas transaction in which Dafna was allegedly involved. (Id. ¶ 3). On October 17, 2007, the three principals of Dafna - - Mor, Chouhan and Oh - - appeared in Amster's office and demanded the release of $400,000 of the Escrow Funds for the transaction. (Id. ¶ 4). The bank check, made payable to Dafna, was released and the funds were cleared out of the Escrow Account. (Id.) On November 5, 2007, Mr. Mor again contacted the attorney and demanded that the remaining $100,000 be wired to Dafna's account for the transaction. (Id. ¶ 5). As requested,

---

[4]Citations to "Newman Aff." refer to the Affidavit of Mitchell Newman in Support of Default Judgment, dated June 17, 2008.

[5]The Court notes that the copy of the PSA submitted in support of plaintiff's claims indicates that it is a "draft" and although it bears what appears to be plaintiff's and Mor's signatures, it is apparent that the document was never executed by Rizzi. (Pl's. Ex. B). Plaintiff, however, testified that based on his discussion with Mor at the time of the signing, he understood the agreement to be executed and enforceable. (Tr. at 9).

[6]Citations to "Amster Aff." refer to the Affidavit of Steven Amster, Esq., dated July 28, 2008.

Mr. Amster transferred the funds. (Id.)

Plaintiff became aware of these transfers of the Escrow Funds in January 2008 when he was in Florida looking at investment property with Isaac Kotsi. (Tr. at 11). At that time, plaintiff noticed that a portion of Kotsi's office was shared by a company called Terra Title with which Kotsi's brother, Dan Kotsi, had some involvement. (Id.) Specifically, plaintiff explained that Dan Kotsi was the president of Royal Palm Communities Diversified Holding ("RPC"), which was the company allegedly selling the Las Vegas property to Dafna. (Id. at 15). Through the Kotsi brothers and Mr. Amster, plaintiff subsequently learned that the Escrow Funds had been transferred from the Escrow Account but had not been invested in the Las Vegas property. (Id. at 13, 14). Upon learning this, plaintiff contacted Mr. Mor in about January 2008, who initially told plaintiff that the money was still being held in escrow by Terra Title and the contract to buy the property was still valid. (Id. at 14). When plaintiff confronted Mr. Mor, telling him that this was not true, and demanding that his money be returned, Mr. Mor got angry and ended the conversation. (Id. at 14).

During the course of that conversation, Mr. Mor also told plaintiff that $250,000 of the funds had been transferred to a company in Ecuador to invest in a gold mine.[7] (Newman Aff. ¶ 8; Comp. ¶ 31). Subsequently, in February 2008, Mr. Mor told plaintiff that the monies had been invested in an oil refinery project in Ecuador. (Newman Aff. ¶ 8; Compl. ¶ 36). Mr. Mor also told plaintiff that $250,000 remained in Dafna's New York bank account. (Compl. ¶ 35). Plaintiff asserts that neither he or Rizzi consented to such an investment or consented to

---

[7]During the inquest hearing, plaintiff testified that he was first told the money was being invested in an oil mine or oil well. (Tr. at 16).

4

investing the funds outside the United States. (Compl. ¶¶ 32-34). According to plaintiff, the parties agreed that if the Las Vegas deal did not happen, the funds would be returned. (Tr. at 16).

Mr. Mor told plaintiff that these Ecuadoran deals were not done in Dafna's name but by defendants for their individual investments into these projects. (Newman Aff. ¶ 9). Plaintiff claims that he spoke directly with Harry Oh and Mohammad Chouhan about the money and that both acknowledged that the funds had been moved out of the country. (Tr. at 19-20). Despite plaintiff's demand for a refund of the total $500,000,[8] defendants have refused to return plaintiff's funds or provide any information as to what banks, if any, hold the money. (Compl. ¶¶ 40-42; Newman Aff. ¶ 10).

Plaintiff seeks damages in the amount of $500,000, representing the total amount of funds invested, plus $22,500 in expenses which plaintiff was asked to send to pay certain charges incurred on Mr. Mor's wife's[9] credit cards. (Tr. at 18). Plaintiff paid $16,000 of these expenses directly into Vradii's checking account, (Newman Aff. ¶ 6; Ex. C), and the remaining $6,500 to Mor. In addition, plaintiff seeks reimbursement of attorney's fees and treble damages under New York's General Business Law § 349(a).

---

[8] According to plaintiff, he bought out Mr. Rizzi's share of the $500,000 in order to make his brother-in-law whole, and he now seeks the full amount in this suit. (Newman Aff. ¶ 4; Tr. at 9, 20-21).

[9] Mor's wife, Elena Vradii, is named as a defendant in this lawsuit.

## DISCUSSION

A. <u>Standards for Default Judgment</u>

Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case. See <u>id.</u>; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default").

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b). If the amount of damages must be ascertained in order for default judgment to be entered, the court may conduct a hearing. See Fed. R. Civ. P. 55(b)(2); <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95. Here, plaintiff submitted a request for entry of default and default judgment on June 18, 2005. The Clerk of the Court entered a default on the same day.

When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. See <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1080 (1993). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. <u>Id.</u>; <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981).

In determining whether a default judgment should enter, courts have cautioned that a

default judgment is an extreme remedy that should only be granted as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. at 96. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including whether the grounds for default are clearly established, and the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). The greater the amount of money involved, the less justification there is for entering the default judgment. Id. Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65 (discussing factors); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A Fed. Practice & Procedure, §§ 2685, 2688

(3d ed. 1998).

B. Plaintiff's Claims

Here, plaintiff's Complaint clearly sets forth facts which, if true, establish plaintiff's claim for breach of contract. "Under New York law, a plaintiff must prove four elements to prevail on a breach of contract claim: '(1) the making of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract and (4) damages suffered by the plaintiff.'" Eastman Kodak Co. v. STWB Inc., 232 F. Supp. 2d 74, 91 (S.D.N.Y. 2002) (quoting Kreiss v. McCown DeLeeuw & Co., 37 F. Supp. 2d 294, 298 (S.D.N.Y. 1999); Coastal Aviation, Inc. v. Commander Aircraft Co., 937 F. Supp. 1051, 1060 (S.D.N.Y. 1996), aff'd, 108 F.3d 1369 (2d Cir. 1997)). Plaintiff alleges that he paid $500,000 to Dafna pursuant to the PSA in return for defendants' promise to invest the funds in a Las Vegas property. Based on the uncontroverted evidence, defendants failed to perform as promised, and instead took plaintiff's money from the escrow account under false pretenses and used the funds in some manner other than what was agreed to under the PSA. As such, plaintiff has stated a cause of action for breach of contract.

In addition, plaintiff's Complaint alleges a cause of action for conversion. While money may properly be the subject of a conversion action under certain circumstances, a cause of action for conversion will be dismissed if it is duplicative of a cause of action for breach of contract, even if a plaintiff meets all the elements of conversion. See AD Rendon Communications, Inc., v. Lunina Americas, No. 04 CV 8832, 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007). To determine whether a cause of action for conversion is duplicative of a cause of action for breach of contract, courts look to the material facts upon which each cause of action is based and to the

8

alleged injuries for which damages are sought. Id. at *5. Here, the material facts supporting each cause of action and the damages alleged are exactly the same for the cause of action for conversion as they are for the cause of action for breach of contract. Since plaintiff would, in effect, be paid twice if he could recover under both claims, he may not recover on a cause of action for conversion.

Plaintiff's Complaint also alleges a cause of action for unjust enrichment. However, unjust enrichment is a non-contractual, equitable remedy that is inapplicable if there is an enforceable contract governing the subject matter. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 60 (2d Cir. 1997). Here, there is an enforceable contract governing the subject matter. Plaintiff has a cause of action for breach of contract that covers all of his damages. Thus, there is no need to consider his cause of action for unjust enrichment.

Finally, plaintiff's Complaint alleges a cause of action for fraud. Specifically, plaintiff alleges that defendants' material misrepresentations and omissions of material fact were deceptive acts or practices in the conduct of a business, trade or commerce in violation of the New York General Business Law 349(a). To establish a violation of Section 349, a plaintiff must prove that: (i) the conduct of the defendant is consumer-oriented; (ii) defendant is engaging in an act or practice that is deceptive or misleading in a material way; and (iii) plaintiff has been injured by reason thereof. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744, 623 N.Y.S.2d 529, 533 (1995). For a claim to classify as "consumer-oriented," a plaintiff must plead and prove injury to the public generally, rather than to himself alone. Int'l Sport Divers Ass'n, Inc. v. Marine Midland Bank, N.A., 25 F. Supp. 2d 101, 114 (W.D.N.Y.1998). To the extent that plaintiffs claim such losses, the law requires

plaintiffs to prove injury to the public. Here, because plaintiff has not proven injury to the public, he has not stated a cause of action for fraud under New York General Business Law.

C. Default Analysis

It is beyond dispute that defendants are in default. The corporate defendant, Dafna, is in default not only because it has not responded to the Complaint, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"), but also because it has failed to obtain counsel. Failure to obtain counsel constitutes a failure to defend because corporations may not proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Further, the amount of money involved in this case is not great, unlike a case in which there are potentially millions of dollars involved. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, as plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Here, defendants have not only failed to file an answer or otherwise move with respect to the Complaint, but they have also failed to respond either to plaintiff's motion for entry of a default judgment or to the Order from this Court relating to the calculation of damages. Thus, the plaintiff's evidence on damages is undisputed. Given the opportunities afforded defendants

and their apparent lack of interest in participating in these proceedings, there seems to be no compelling reason to delay further.

Accordingly, it is respectfully recommended that plaintiff's motion for entry of a default judgment be granted as to his cause of action for breach of contract.

D.  Default Judgment Damages

1) Standards

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. The burden is on the plaintiff to establish his entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. Defendants who default are entitled to discovery regarding unliquidated damages. See Securities & Exch. Comm'n v. Wang, No. 88 CV 4461, 1989 WL 135558, at *1 (S.D.N.Y. May 22, 1989); Clague v. Bednarski, 105 F.R.D. 552, 552 (E.D.N.Y. 1985). When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that:

> [i]f, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper. . . .

Fed. R. Civ. P. 55(b)(2). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (gathering cases),

aff'd, 873 F.2d 38 (2d Cir. 1989).

Here, although the plaintiff filed reasonably detailed affidavits and exhibits pertaining to the damages incurred, the Court nonetheless held an evidentiary hearing at which the plaintiff presented additional information in support of his request for damages. Defendants not only failed to appear at the hearing, but they have failed to respond and present evidence on the issue of damages. Thus, the Court makes its recommendation regarding damages on the basis of the papers submitted and the evidence presented during the inquest hearing.

2) Calculation of Damages

Based on the terms of the PSA, the Affidavit of Stephen Amster, plaintiff's own testimony, which the Court credits, and the supporting documentation, which includes a ledger detailing activity in and out of the Escrow Account and a copy of the $400,000 check, it is clear that plaintiff and his brother-in-law transferred $500,000 to defendants which was not invested in accordance with the parties' agreement. Under these circumstances, where defendants have failed to appear or provide a contrary explanation, this Court respectfully recommends that plaintiff be awarded $500,000 from defendants. The Court further recommends that based on plaintiff's testimony and copies of deposit slips into Vradii's Citibank account, plaintiff advanced an additional $22,500 in monies to defendants to pay expenses in connection with the transaction. Given that the defendants failed to abide by the terms of the PSA as agreed, the Court finds that plaintiff should receive $22,500 paid as expenses.

Plaintiffs also seek statutory interest on the damages awarded. (Compl. ¶ A). In New York, a prevailing party is entitled to prejudgment interest from the date that a breach of contract occurred until the date of final judgment. See CPLR §§ 5001-5002; Schipani v. McLeod, No. 06

CV 5733, 2008 WL 3553995, at *6 (2d Cir. Aug. 15, 2008); U.S. Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 698 (2d Cir. 1991). The statutory rate for such prejudgment interest is 9 percent per annum. See CPLR § 5004; Mars Elecs. v. U.S.A. Direct, 28 F. Supp. 2d 91 (E.D.N.Y. 1998); see also Hunter TBA, Inc. v. Triple V Sales, 250 F.R.D. 116 (E.D.N.Y. 2008). Based on the principal amount awarded of $522,500, the Court respectfully recommends that prejudgment interest be awarded to plaintiff at 9% per annum from the date of October 17, 2007, when defendants demanded the release of the first $400,000 of the Escrow Funds, to the date judgment is entered.[10]

Pursuant to 28 U.S.C. § 1961(a), litigants are entitled to post-judgment interest on money awards issued by a district court. Schipani v. McLeod, 2008 WL 3553995, at *6. Post-judgment interest is established by federal statutory authority and its accrual is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a); see also Int'l Consulting Servs. v. Cheap Tickets, Inc., No. 01 CV 4768, 2007 U.S. Dist. LEXIS 71689 at *30 (E.D.N.Y. Sept. 12, 2007). Since § 1961(a) does not allow "the exercise of judicial discretion in its application," see Akermanis v. Sea-Land Service, Inc., 521 F. Supp. 44, 57 (S.D.N.Y. 1981), rev'd on other grounds, 688 F.2d 898 (2d Cir. 1982), cert. denied, 461 U.S. 927 (1983), the plaintiffs are entitled to post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961.

---

[10] As of March 10, 2009, the date of this Report and Recommendation, interest accrued at 9% equals $65,706.16.

### 3) Punitive Damages

In addition, plaintiff requests in his Complaint an award of punitive and statutory treble damages pursuant to New York General Business Law 349(a), presumably for defendants' fraudulent representations prior to and subsequent to the execution of the Agreement.[11] While punitive damages are generally not recoverable in an ordinary breach of contract action because "their purpose is not to remedy private wrongs but to vindicate public rights," Rocanova v. Equitable Life Assurance Soc'y of the U.S., 83 N.Y.2d 603, 613, 634 N.E.2d 940, 943, 612 N.Y.S.2d 339, 342 (1994), the New York Court of Appeals has held that "where the breach of contract also involves a fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations,' punitive damages are recoverable if the conduct was 'aimed at the public generally.'" Id. (quoting Walker v. Sheldon, 10 N.Y.2d 401, 405, 179 N.E.2d 497, 499, 223 N.Y.S.2d 488, 491 (1961)). Thus, the party seeking punitive damages must show not only egregious tortious conduct causing injury to that party but also that the conduct was part of a pattern of similar conduct directed at the public generally. Id.

Plaintiff's Complaint claims with specificity that defendants made fraudulent representations while negotiating and performing the Agreement. (Compl. ¶ 57). However, New York law is clear in requiring a showing that defendant's conduct be "aimed at the public generally." Id. In his Complaint, plaintiff alleges that defendants committed fraud only as to

---

[11]Although not entirely clear, it appears that plaintiff is seeking punitive damages as a component of his claim under New York's General Business Law. As discussed supra at 9-10, the Court is respectfully recommending that no award be made for that claim because plaintiff has failed to allege a necessary element under that statute.

14

plaintiff, and makes no assertion that defendants' conduct was more than just an isolated incident. Plaintiff makes no claim that defendants were engaged in a larger scheme to defraud the public. Therefore, plaintiff has failed to allege an element required for the assessment of punitive damages. Accordingly, the Court respectfully recommends that plaintiff's request for punitive damages be denied.

4) Attorney's Fees and Costs

In addition to punitive damages, plaintiff also seeks reimbursement of attorney's fees associated with the PSA and this litigation. (Marion Aff.[12] ¶¶ 2, 3). New York law holds that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." Hooper Assocs., v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 366, 548 N.E.2d 903, 904 (1989). This is consistent with the American Rule for attorney's fees which requires each party to bear its own legal costs "unless an award is authorized by agreement between the parties, statute or court rule." Tevdorachvili v. Chase Manhattan Bank, 103 F.Supp.2d 632, 644 (2000).

Since it is unclear on what basis plaintiff believes he is entitled to reimbursement from defendants, this Court respectfully recommends that the request for reimbursement of attorney's fees be denied.

In addition to attorney's fees, plaintiff also seeks reimbursement of $744.77 in expenses. (Marion Aff. ¶ 2). Under 29 U.S.C. § 1132(g)(2)(D), plaintiffs are entitled to reimbursement of

---

[12]Citations to "Marion Aff." refer to the Affidavit of Roger Marion in Support of Default Judgment, dated July 28, 2008.

filing fees and other specified court expenses. However, since plaintiff has not indicated how the requested expenses were incurred or provided supporting documentation, the Court cannot recommend an award for these expenses. If plaintiff wishes to be reimbursed for these expenses, he may supplement his paperwork by March 23, 2009, indicating whether they are among the costs enumerated in Section 1132(g)(2)(D).

5) <u>Joint and Several Liability</u>

Under the doctrine of joint and several liability, when two or more parties' torts together cause an injury, each tortfeasor is liable to the victim for the total damages. See <u>Zapico v. Bucyrus-Erie Co.</u>, 579 F.2d 714, 718 (2d Cir. 1978); <u>In re Masters Mates & Pilots Pension Plan</u>, 957 F.2d 1020, 1027–28 (2d Cir. 1992).

Although plaintiff and his brother-in-law entered into the PSA and invested their $500,000 with the corporate defendant Dafna, the uncontroverted evidence shows that the individual defendants Mor, Chouhan, and Oh took the funds and made illegal investments of plaintiff's money in Ecuadorian companies not in Dafna's name but in their individual capacities. Thus, the individual defendants Mor, Chouhan, and Oh, and the corporate defendant Dafna are all jointly and severally liable to plaintiff for the full amount of damages. In addition, defendant Vradii, who is not alleged to be a shareholder of Dafna or to have invested the $500,000, but who received $16,000 directly into her checking account allegedly in expenses in connection with the PSA, is jointly and severally liable with the other defendants for the $16,000 she received from plaintiff. Accordingly, since plaintiff may not receive an award of damages more than once, this default judgment against defendants should be read to allow for a single award of damages to plaintiff.

## CONCLUSION

In light of defendants' default, and having considered the undisputed evidence presented by plaintiff in support of his request for damages, the Court respectfully recommends that plaintiff be awarded $522,500 in damages for breach of contract, plus $65,706.16 in pre-judgment interest. It is further recommended that plaintiff's request for punitive damages and for attorney's fees be denied, but that post-judgment interest be awarded in accordance with 28 U.S.C. § 1961. Finally, to the extent that plaintiff wishes to pursue his claim for reimbursement of costs incurred with this litigation, it is respectfully recommended that he be given until March 23, 2009 to supplement his paperwork in accordance with this Report.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 10, 2009

CHERYL L. POLLAK
United States Magistrate Judge